IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAMA NJIE, #R11748, <br><br> Plaintiff, <br><br> v. <br><br> ROB JEFFREYS, <br> ANTHONY WILLS, <br> JUSTIN HECHT, <br> JOSHUA SCHOENBECK, <br> ANTHONY JONES, <br> SANDY WALKER, <br> JOHN DOE 1, <br> JOHN DOE 2, and <br> YVETTE BAKER, <br><br> Defendants. | Case No. 23-cv-00795-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Adama Njie, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff alleges that on August 17, 2021, all inmates in 10 Gallery of West Cellhouse were handcuffed and taken to the chapel for a tactical shakedown. (Doc. 1, p. 5). Around 12:30 p.m., Plaintiff and his cellmate, Justin Baker, were called to the front and instructed to place their foreheads to the wall. At around 1:00 p.m., Plaintiff was taken to segregation in North 2 Cellhouse. He was assigned to cell 403, which was filthy and did not have a mattress. The cell was "plagued with rodents and insects" and feces were smeared on the wall and toilet. Plaintiff was not given hygiene items or personal property, including toilet paper, soap, toothbrush, toothpaste, blankets, towels, or cleaning supplies. Plaintiff asked correctional officers about the cell conditions and being provided a mattress and cleanings supplies but "to no avail." (*Id.*).

Plaintiff received a fabricated disciplinary report written by Defendant Hecht for the offenses of "104 dangerous contraband and 203 drugs and drug paraphernalia." (Doc. 1, p. 5). He asserts that Internal Affairs Officers falsely stated that his family photos tested positive for synthetic cannabinoids. (*Id.* at p. 6).

The next day, on August 18, 2021, Plaintiff was given a mattress but was not given bed sheets or the personal hygiene items that he had previously purchased from the commissary, cleaning supplies, or toilet paper. (Doc. 1, p. 6).

On August 19, 2021, Plaintiff was moved to cell 3-52. (Doc. 1, p. 6). The cell conditions of this new cell were even worse. The lights were on 24 hours a day and seriously mentally ill inmates (SMI) kicked and banged on the bars yelling and screaming all day and night. At some point, the SMI inmates had attempted to burn their mattresses and so the correctional officers opened windows for ventilation and to air out the smoke leaving the gallery "freezing." The same inmates were sprayed with pepper spray making the air more difficult to breath. When inmates

would walk by the cells, the SMI inmates would throw feces and urine. Plaintiff states he was forced to smell feces, urine, smoke, and pepper spray the majority of his time in segregation when he did not violate any institutional rule in the first place. (*Id.* at p. 6).

On August 24, 2021, Plaintiff had his disciplinary hearing before the Adjustment Committee. (Doc. 1, p. 7). The Adjustment Committee was composed of members Schoenbeck, Jones, and Walker. Plaintiff pled not guilty and informed the Adjustment Committee that the substance on the photos was not synthetic cannabinoids but fish oil and urine. He asserts that over a year prior to the current incident, in May of 2020, he left for yard and when he returned, he was interviewed regarding an alleged fight with a cellmate and taken to segregation without his property. (*Id.* at p. 26). When his property was returned to him, some of the property was missing and damaged. (*Id.*). The damaged property included photos that were covered in urine and fish oil. At the time, Plaintiff wrote a grievance about the issue dated May 7, 2020. (*Id.*). Plaintiff also went before the Adjustment Committee on June 5, 2020, for the offenses of 104 dangerous contraband and 308 contraband/unauthorized property and informed the Adjustment Committee that someone had destroyed his property by urinating on it and pouring mackerel fish oil on it. (*Id.* at p. 7, 29). Plaintiff told the Adjustment Committee members of all these facts in his statement, and they were informed that the substance on the photos was not illicit. Despite this information, the Adjustment Committee found him guilty. (*Id.*).

Plaintiff was sanctioned with six months in segregation, six months of contact visit restrictions, and three months on C-grade states. (Doc. 1, p. 8). Plaintiff was also placed on "pink tag," which means he could not go to showers for seven days and could not go to yard for thirty days. (*Id.* at p. 7). Plaintiff claims that the Adjustment Committee's final summary stated he was found guilty partially on his admission that the photos were his and on the false statement that the

photos tested positive for synthetic cannabinoids. (*Id.* at p. 10). The disciplinary report issued to Justin Baker, Plaintiff's cellmate, was dismissed. Baker's final summary falsely stated that Plaintiff had taken reasonability for the synthetic cannabinoids. (*Id.*).

On August 26, 2021, some of Plaintiff's personal property was returned to him, including clothes, towels, face cloths, soap, toothbrush, toothpaste, bedding, and most of his legal materials. (Doc. 1, p. 8).

Plaintiff wrote a grievance asking to be compensated for his time in segregation and to notify officials that he would pay for an independent company to test the photos for synthetic cannabinoids. (Doc. 1, p. 8). On October 8, 2021, Yvette Baker recommended that Plaintiff's grievance be denied. (*Id.* at p. 9). She found that based on the charges, the sanctions imposed by the Adjustment Committee were correct and in accordance with IDOC regulations. Plaintiff states that Baker falsely wrote in the grievance response that he has an extensive history for possession of dangerous contraband and drug paraphernalia. (*Id.*). Warden Wills then failed to properly investigate the grievance and concurred in Baker's recommendation. (*Id.* at p. 10). Plaintiff then appealed the grievance and wrote Director Jeffreys a letter explaining that Menard staff had falsified the disciplinary report and that it was fish oil and urine on the photos. (Doc. 1, p. 10).

In January 2022, Plaintiff received a memo from the Statue of Illinois Department of Corrections stating the three months C-grade status demotion for the offense of 104 dangerous contraband had been deleted from the disciplinary report. (Doc. 1, p. 11). Plaintiff states that Director Jeffreys knew that the entire disciplinary report was bogus and should have also deleted the other offense of 203 drugs and drug paraphernalia, but Jeffreys did not. (*Id.*).

On March 23, 2022, officers from Internal Affairs returned to Plaintiff the nine photos that had allegedly tested positive for synthetic cannabinoids. (Doc. 1, p. 13). Officer Hoffman told

Plaintiff that the photos had been sent to the Illinois State Police crime lab and the results had been negative. Plaintiff asked how he could receive a copy of those results, and Hoffman told him he would have to write to the legal department. Plaintiff wrote the legal department but did not receive a response. Plaintiff also wrote to Schoenbeck, the chairperson of the Adjustment Committee, and informed him that the photos had actually tested negative for synthetic cannabinoids. Plaintiff did not receive a response. (*Id.*). Plaintiff also wrote an additional grievance based on this new information, and the grievance was ultimately denied. (*Id.* at p. 14).

## DISCUSSION

Based on the allegations in the Complaint and Plaintiff's articulation of his claims, the Court designates the following counts:

**Count 1:** Fourteenth Amendment claim against Jeffreys, Wills, Hecht, Schoenbeck, Jones, Walker, John Doe 1, John Doe 2, and Baker for punishing Plaintiff without due process of law.

**Count 2:** Eighth Amendment claim for unconstitutional conditions of confinement while celled in cells 403 and 3-52.

**Count 3:** First Amendment claim against Jeffreys, Wills, Hecht, Schoenbeck, Jones, Walker, John Doe 1, John Doe 2, and Baker for retaliating against Plaintiff.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Count 1

Prisoners are not entitled to Fourteenth Amendment due process protections unless they

---

[1] *See Twombly,* 550 U.S. at 570. This includes Plaintiff's claims that his Fourth, Fifth, and Sixth Amendment rights have been violated. (Doc. 1, p. 7, 17). He does not allege any supporting facts or associate these claims with any single defendant. Therefore, they are dismissed without prejudice.

can establish the deprivation of a constitutionally protected interest in life, liberty, or property. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (*per curiam*). A prisoner has no protected liberty interest in housing in the general inmate population, except in the rare instances that his "segregation conditions…constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *See also Zimmerman v. Tribble*, 226 F. 3d 568, 572 (7th Cir. 2000) ("the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). The Seventh Circuit Court of Appeals has indicated that when a term of segregation is limited, typically to periods of less than six months, "an inmate's liberty interest in avoiding segregation is limited or even non-existent." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 & n.2 (7th Cir. 2009) (collecting cases). *See also Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (no due process violation for ninety days in disciplinary segregation); *Hoskins v. Lenear* 95 F.3d 372, 374-75 (7th Cir. 2005) (no due process violation for sixty days in disciplinary segregation); *Thomas*, 130 F.3d at 760-62 (no due process violation for seventy days); *Hardaway v. Meyerhoff,* 734 F. 3d 740, 744 (7th Cir. 2013) (no liberty interest implicated where inmate spent six months in segregation with a violent cellmate and "was permitted to use the shower and prison yard once every week"). But see *Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015); *Singh v. Gegare*, 651 F. App'x 551, 555 (7th Cir. 2016).

In this case, Plaintiff served six months in segregation because of the disciplinary ticket. Other than stating that he was denied a shower for seven days and could not go to yard for 30 days, he does not describe his conditions of his confinement in segregation once found guilty. (Doc. 1, p. 7). Instead, Plaintiff focuses his complaints about the conditions he experienced in "quasi

punitive segregation" prior to the disciplinary hearing while celled in cell 403 and cell 3-52. (*Id.* at p. 5-8). Not being able to shower for a week and being denied yard time for 30 days are not the type of atypical conditions that create a cognizable liberty interest. A demotion in grade and limitation on visitations also do not invoke due process protections. *See Woody v. Zatecky,* 594 F. App'x 311, 312 (7th Cir. 2015). Absent any additional facts about his conditions while in segregation, the Court is unable to find that a protected liberty interest was at stake or the right to due process of law was triggered under the Fourteenth Amendment. Count 1 is dismissed without prejudice.

**Count 2**

To the extent Plaintiff is attempting to plead unconstitutional conditions of confinement claim for the conditions he experienced while celled in cells 403 and 3-52, the claim also fails. Plaintiff asserts that he was housed for nine days in filthy cells without hygiene items, bedding, or cleaning supplies. Once he was placed in cell 3-52 on August 20, 2021, the gallery was loud, smelled of smoke, feces, urine, and pepper spray, and the lights were on twenty-four hours. It is not clear how long Plaintiff remained in cell 3-52.

The Eighth Amendment prohibition on cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted). To succeed on a claim related to conditions of confinement, a plaintiff must establish that (1) he was denied the minimal civilized measure of life's necessities creating an excessive risk to his health or safety; and (2) the defendant acted with deliberate indifference to a substantial risk of serious harm to him. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

"The Seventh Circuit Court of Appeals has repeatedly held that temporary conditions such as those the plaintiff complains of here do not amount to subjection to 'cruel and unusual

punishment.'" *Lee v. Washington,* 1999 WL 759609, at *7 (N.D. Ill. Aug. 31, 1999) (citing *Johnson v. Pelker*, 891 F.2d 136, 138–39 (7th Cir.1989); *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir.1988) (confinement in a "filthy, roach-infested" cell without articles of hygiene for five to ten days did not violate the Eighth Amendment); *Bono v. Saxbe,* 620 F.2d 609, 613 (7th Cir.1980) (generally harsher conditions in segregation unit do not violate the Eighth Amendment)). *See also Isby v. Brown,* 856 F. 3d 508, 522 (7th Cir. 2017). Furthermore, Plaintiff does not describe any of the named Defendants as having any knowledge of his conditions. Thus, it cannot be said that Defendants acted with deliberate indifference to a substantial risk of serious harm to Plaintiff. Plaintiff has failed to state a claim for unconstitutional conditions of confinement, and Count 2 is dismissed without prejudice.

### Count 3

Plaintiff's allegation that prison officials retaliated against him is conclusory and not associated with any specific defendant. (Doc. 1, p. 9, 10, 16). Therefore, Count 3 is dismissed without prejudice.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion for recruitment of counsel (Doc. 2), which is **DENIED.** As a litigant in a civil case, Plaintiff has no right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). However, a District Court "may request an attorney to represent any person *unable to afford counsel*." 28 U.S.C. § 1915 (e)(1) (emphasis added). Plaintiff has not submitted any documentation to demonstrate to the Court that he is indigent. As he has paid the filing fee in full and is not proceeding *in forma pauperis* in this case, the Court has no basis for concluding that he is unable to afford counsel as is required by Section 1915(e). Thus, motion is denied without prejudice.

**DISPOSITION**

For the reasons set forth above, the Complaint (Doc. 1) is **DISMISSED without prejudice** for failure to state a claim for relief.

Plaintiff is **GRANTED** leave to file a "First Amended Complaint" on or before **December 15, 2023.** Should Plaintiff fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to state a claim, failure to comply with a court order, and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

It is strongly recommended that Plaintiff use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 23-cv-00795-SPM). To enable him to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint must stand on its own without reference to any previous pleading. Plaintiff must re-file any exhibits he wishes the Court to consider. The First Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of

prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 17, 2023**

                                                     *s/Stephen P. McGlynn*
                                                   **STEPHEN P. MCGLYNN**
                                                   **United States District Judge**