IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ADAMA NJIE,** **#R11748,**         **Plaintiff,** v. **ROB JEFFREYS,** **ANTHONY WILLS,** **JUSTIN HECHT,** **JOSHUA SCHOENBECK,** **ANTHONY JONES,** **SANDY WALKER,** **JOHN DOE 1,** **JANE DOE 2, and** **YVETTE BAKER,**         **Defendants.** | Case No. 23-cv-00795-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      Plaintiff Adama Njie, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Western Illinois Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred at Menard Correctional Center. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE FIRST AMENDED COMPLAINT

Plaintiff alleges that on August 17, 2021, he was handcuffed and walked to the chapel while a tactical shakedown was conducted of West Cell House. (Doc. 9, p. 5). Around 12:30 p.m., Plaintiff and his cellmate, Justin Baker, were called to the front and instructed to place their foreheads to the wall. At 1:00 p.m., Plaintiff was taken to North 2 Cellhouse, the segregation unit. He was assigned to cell 403, which was filthy and did not have a mattress. The cell was "plagued with rodents and insects" and feces were smeared on the wall and toilet. Plaintiff was not given hygiene items or personal property, including toilet paper, soap, toothbrush, toothpaste, blankets, towels, or cleaning supplies. (*Id.* at p. 5-6). Plaintiff asked correctional officers about the cell conditions and being provided a mattress and cleanings supplies but "to no avail." (*Id.* at p. 6).

Plaintiff received a fabricated disciplinary report written by Defendant Hecht for the offenses of "104 dangerous contraband and 203 drugs and drug paraphernalia." (Doc. 9, p. 6). He asserts that Internal Affairs Officers John Doe and Jane Doe falsely reported that his family photos tested positive for synthetic cannabinoids. (*Id.*).

The next day, on August 18, 2021, Plaintiff was given a mattress, but he was not given bed sheets, cleaning supplies, or the personal hygiene items that he had previously purchased from the commissary. (Doc. 1, p. 6).

On August 20, 2021, Plaintiff was moved to cell 3-52. (Doc. 9, p. 6). The cell conditions of this new cell were even worse. The lights were on 24 hours a day and seriously mentally ill inmates (SMI) kicked and banged on the bars yelling and screaming all day and night. (*Id.* at p. 6-7). Plaintiff remained in this cell for six months. (*Id.* at p. 7). At some point, during the winter months, the SMI inmates attempted to burn their mattresses and so the correctional officers opened windows for ventilation and to air out the smoke leaving the gallery "freezing." The same inmates were sprayed with pepper spray making the air more difficult to breath. When inmates would walk

by the cells, the SMI inmates would throw feces and urine. Plaintiff states he was forced to smell feces, urine, smoke, and pepper spray the entire time he was held in segregation when he did not violate any institutional rule in the first place. (*Id.*).

On August 24, 2021, Plaintiff had his disciplinary hearing before the Adjustment Committee. (Doc. 1, p. 7). The Adjustment Committee was composed of members Schoenbeck, Jones, and Walker. Plaintiff pled not guilty and informed the Adjustment Committee that the substance on the photos was not synthetic cannabinoids but fish oil and urine. He asserts that over a year prior to the current incident, in May of 2020, while at yard, his property was destroyed. (*Id.* at p. 7-8). He states during another disciplinary hearing in 2020 he informed Schoenbeck and Walker that somebody had urinated and poured mackerel fish oil on his personal property. (*Id.* at p. 8). Plaintiff asserts that Jones also knew about the previous property damage. Despite this information, Plaintiff was found guilty and sanctioned with a pink tag designation, meaning he could not shower for eight days or attend yard for 30 days. (*Id.*). He was also sentenced to six months in segregation, demoted to C-grade status for three months, and was prohibited from using the telephone, video visits, contact visits, and purchasing food at the commissary. (*Id.* at p. 8, 9).

On August 26, 2021, Plaintiff was given some of his personal property – clothes, towels, toothbrush, toothpaste, blanket, and some legal materials. (Doc. 9, p. 8). Plaintiff believes he now has gum disease because he did not have a toothbrush and toothpaste for nine days. (*Id.*).

Plaintiff asserts that on September 22, 2021, Menard Correctional Center received lab results from his tested property stating, "no scheduled substance found." (Doc. 9, p. 9). Defendants knew of these test results, but he remained in segregation another five months. (*Id.* at p. 10).

In January 2022, Plaintiff received a memorandum stating that the demotion to C-grade status for charge 104 dangerous contraband had been deleted from his disciplinary record. (Doc. 9, p. 12-13). The 203 charge for drugs and drug paraphernalia remained. (*Id.* at p. 13). Plaintiff

filed grievances, wrote letters to Jeffreys, and personally spoke to Schoenbeck, Jones, and Walker about the exonerating evidence, but the 203 drug charge was not discharged. (*Id.* at p. 15).

## DISCUSSION

Based on Plaintiff's articulation of his claims, the Court designates the following counts:

**Count 1:**  First Amendment claim against Jeffreys, Wills, Hecht, Schoenbeck, Jones, Walker, John Doe, Jane Doe, and Baker for retaliating against Plaintiff.

**Count 2:**  Fourth Amendment claim against Wills, Schoenbeck, Jones, Walker, Hecht, John Doe, and Jane Doe.

**Count 3:**  Fourteenth Amendment [1] claim against Jeffreys, Wills, Hecht, Schoenbeck, Jones, Walker, John Doe, Jane Doe, and Baker for punishing Plaintiff without due process of law.

**Count 4:**  Sixth Amendment claim against Wills, Schoenbeck, Jones, Walker, John Doe, and Jane Doe for refusing to produce to Plaintiff the test results showing that the photos tested positive for synthetic cannabinoids.

**Count 5:**  Eighth Amendment claim against Jeffreys, Wills, Schoenbeck, Walker, Jones, Hecht, Baker, John Doe, and Jane Doe for placing Plaintiff in unconstitutional conditions of confinement following the disciplinary hearing.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

---

[1] Plaintiff brings his denial of due process claims pursuant to the Fifth and Fourteenth Amendment. (Doc. 1, p. 5). The Fifth Amendment supplies the guarantee of procedural due process to a federal inmate, and so, the Court will analyze Plaintiff's procedural due process claims, who is a state prisoner, under the Fourteenth Amendment only. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

[2] *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007). This includes Plaintiff's claim that Defendants have violated the equal protection clause. (Doc. 1, p. 9). Plaintiff does not provide any factual allegations to support this assertion.

**Count 1**

Prison officials are prohibited from retaliating against inmates for exercising their First Amendment rights by filing lawsuits about their conditions of confinement. *See Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). A plaintiff asserting a retaliation claim must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future First Amendment activity; and (3) his protected activity was "at least a motivating factor" in the defendant's decision to take retaliatory action against him. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009)).

Plaintiff's allegations are insufficient to state a claim of retaliation against Defendants. He asserts that the disciplinary ticket was fabricated, he was found guilty of the ticket, and he was wrongfully placed and remained in segregation despite exonerating evidence in retaliation for filing and winning a lawsuit pertaining to events that occurred at Hill Correctional Center. (Doc. 9, p. 10-11). Plaintiff's claims, however, fail to adequately allege that his "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F. 3d 983, 996 (7th Cir. 2014). Plaintiff states he believes that Defendants acted with retaliatory motive because after over twenty years in the Illinois Department of Corrections, he did not start receiving disciplinary tickets for drugs until after one of his civil cases was set for trial. (*Id.* at p. 11). This personal belief is mere speculation, and there are simply no facts from which the Court can plausibly infer retaliation on the part of any of the defendants. *See Sanders v. Bertrand,* 72 F. App'x 442, 445 (7th Cir. 2003) (dismissing retaliation claim at merit review where the plaintiff's retaliation claim rested "only on personal beliefs that cannot be substantiated"). *See also Santiago v. Anderson*, 496 F. App'x 630, 633–34 (7th Cir. 2012) ("[Plaintiff's] premise—that every ill befalling him must be retaliatory because everyone knows him to be litigious and a frequent correspondent with the grievance officer—falls short of stating a claim even under notice

pleading."). Accordingly, Count 1 is dismissed without prejudice.

## Count 2

Plaintiff states that his Fourth Amendment rights were violated when Defendants seized his photos, which they knew were for evidence in court, and his GTL tablet. (Doc. 9, p. 5).

The Supreme Court has explicitly held that the Fourth Amendment's prohibition of unreasonable searches and seizures does not apply to those conducted "within the confines of a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). *See also Cannon v. Newport*, 723 F. App'x 344 (7th Cir. 2018). Because Plaintiff's allegations relate to the search of a prison cell, he cannot state a claim against Defendants under the Fourth Amendment.

A claim for the unlawful deprivation of property is more properly brought under the Fourteenth Amendment. If the state provides an adequate remedy, however, Plaintiff has no civil rights claim. Here, the Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *See Stevens v. Norwood*, No. 20-cv-00710-JPG, 2020 WL 6321487, at *1 (S.D. Ill. Oct. 28, 2020) (citing *Hudson*, 468 U.S. at 530-36). Thus, Plaintiff does not have a Fourteenth Amendment claim for the deprivation of his property.

Finally, to the extent Plaintiff is asserting that the confiscation of his photos hindered his ability to litigate his case in the Illinois Court of Claims on March 9, 2022, this claim also fails. (Doc. 9, p. 5, 14). Plaintiff states that Defendants Wills, Schoenbeck, Jones, Walker, Hecht, John Doe, and Jane Doe seized his photos knowing they were to be used in court as evidence. (*Id.* at p. 5). But this conclusory assertion is not supported by the allegations in the First Amended Complaint in which he states his photos were confiscated during an institutional tactical shakedown of West Cell House in April 2021. Plaintiff states that Hecht, John Doe, and Jane Doe seized his photos, but he does not articulate which individual actually denied him access to his

photos prior to his court date in March 2022, almost a year after the seizure. Plaintiff states his photos were returned to him by Internal Affairs Officer Hoffman and Correctional Officer Schanz on March 23, 2022. (*Id.* at p. 14). There are no facts to support the inference that any of the Defendants were involved in retaining the photos once seized or returning the photos to Plaintiff. *See Lehn v. Holmes,* 364 F.3d 862, 868 (7th Cir. 2004). Thus, he has failed to state a claim regarding a lack of access to his photos under the First Amendment.

**Count 3**

Plaintiff alleges that he was denied due process when he was found guilty and sanctioned for possession of drugs based on a false disciplinary ticket and falsified evidence that his property tested positive for synthetic cannabinoids. Once it came to light that his photos tested negative for a scheduled substance (*see* Doc. 9, p. 33), Defendants did not act to exonerate the charges, and he remained in disciplinary segregation.

Even when a plaintiff alleges that his due process rights were violated, he must first show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court reviewing a due process claim engages in a two-part inquiry: (1) was there a protected interest at stake that necessitated the protections demanded by due process; and (2) was the disciplinary hearing process conducted in accordance with procedural due process requirements?

As the Court previously stated in the original merit review order, a prisoner has no protected liberty interest in housing in the general inmate population, except in the rare instances that his "segregation conditions…constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *See also Zimmerman v. Tribble*, 226 F. 3d 568, 572 (7th Cir. 2000) ("the transfer of an inmate to less amenable and more restrictive

quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). The Seventh Circuit Court of Appeals has indicated that when a term of segregation is limited, typically to periods of less than six months, "an inmate's liberty interest in avoiding segregation is limited or even non-existent." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 & n.2 (7th Cir. 2009) (collecting cases).

A demotion to C-grade status, and a loss of commissary, visitor, and state pay privileges do not amount to a deprivation of a protected liberty interest that required due process. *See, e.g., Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases). *See also Vanskike v. Peters,* 974 F.2d 806, 809 (7th Cir. 1992) *cert. denied*, 507 U.S. 928 (1993) (no constitutional right to compensation while incarcerated); *Garza v. Miller,* 688 F.2d 480, 485-86 (7th Cir. 1982), *cert. denied* 459 U.S. 1150 (1983) (no constitutional right to employment). Thus, Count 3 is dismissed as to Plaintiff's claim he was denied due process prior to the deprivation of these privileges.

As for disciplinary segregation, Plaintiff states he served over six months, from August 17, 2021 through February 17, 2022, in filthy segregation cells. He was denied hygiene items for nine days, and once he was moved to cell 3-52 on August 20, 2021, the "lights were kept on 24 hour[s] every day." (Doc. 9, p. 17). He was surrounded by inmates with serious mental illness who would yell, bang on their cells, throw feces as he walked through the cell house, and started fires. At this point, Plaintiff has sufficiently pled that his time in segregation rose to an "atypical and significant hardship" that could implicate a liberty interest protected by the due process clause. Furthermore, Plaintiff alleges that the process he was afforded was constitutionally deficient, as the disciplinary decision was not supported by any evidence. *See Black v. Lane,* 22 F. 3d 1395, 1402 (7th Cir. 1994). Count 3 will proceed against Baker, Jeffreys, Wills, Hecht, Shoenbeck, Jones, Walker, John Doe, and Jane Doe.

### Count 4

Plaintiff's allegation that he was not provided a copy of the drug test results prior to or during the disciplinary hearing does not violate the Sixth Amendment, which applies to criminal defendants and is inapplicable to this case. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply"); *Henderson v. U.S. Parole Com'n,* 13 F. 3d 1073, 1078 (7th Cir. 1994) ("a prisoner disciplinary proceeding is not a criminal prosecution. Prisoners in this context do not possess Sixth Amendment rights to confront and cross-examine witnesses). Count 4 is dismissed.

### Count 5

"The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (citations omitted). To establish an Eighth Amendment conditions of confinement claim, a plaintiff must first plead that the conditions alleged must be, objectively, "sufficiently serious." In other words, the conditions "must deny the inmate the minimal civilized measures of life's necessities, creating an excessive risk to the inmate's health and safety." *Id.* Next, a plaintiff must allege that the defendant had a subjectively, "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). In other words, Defendants must have known about the alleged excessive risk to Plaintiff's health or safety and had deliberate indifference toward that risk. Furthermore, the Seventh Circuit has specifically stated that it is not enough that a prison official "should have been aware" of the risk, *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 566 (7th Cir. 2021), but they must have subjectively known of the substantial risk.

Here, Plaintiff does not plead any facts that Defendants were aware of the conditions of cell 3-52 following his disciplinary hearing or that sanctioning him with six months in segregation

would cause an excessive risk to his health or safety. (Doc. 9, p. 5). Accordingly, Count 5 is dismissed without prejudice.

### IDENTIFYING UNKNOWN DEFENDANTS

Count 3 survives screening against defendants who are not yet identified (among others): John Doe and Jane Doe. However, these defendants must be identified with particularity, so the lawsuit can be served on them. The plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of these defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Warden Anthony Wills shall respond to discovery aimed at identifying the unknown defendants. Once the names of these defendants are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of the generic designations in the caption and the First Amended Complaint.

### DISPOSITION

For the reasons set forth above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 3** will proceed against Jeffreys, Wills, Hecht, Schoenbeck, Jones, Walker, John Doe, Jane Doe, and Baker. **COUNTS 1, 2, 4,** and **5** are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Jeffreys, Wills, Hecht, Schoenbeck, Jones, Walker, Baker, and John and Jane Does (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

The Defendants are **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 15, 2024**

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

  The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.